UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
---------------------------------------------------------------------- X

STAN SALZMAN
10 Tremblay Road, East Brunswick, New Jersey 08816;

LEE SALZMAN
10 Tremblay Road, East Brunswick, New Jersey 08816;

ROBERTA SALZMAN
110 Amethyst Way, Franklin Park, New Jersey 08823;

RAMIRO CAMPUZANO
170 Vineyard Drive, Rochester, New York 14616;

MABEL CAMPUZANO
170 Vineyard Drive, Rochester, New York 14616;

              and

JORGE CAMPUZANO
8912 Edlyn Lane, Ada, Michigan 49301

              Plaintiffs,

        -against-

THE ISLAMIC REPUBLIC OF IRAN
Ministry of Foreign Affairs, Khomeini Ave. United
Nations St., Teheran, Iran;

THE IRANIAN MINISTRY OF INFORMATION AND
SECURITY
Pasdaran Ave., Golestan Yekon, Teheran, Iran

              and

THE ISLAMIC REVOLUTIONARY GUARD CORPS
a/k/a PASDARAN
Pasdaran Ave., Golestan Yekon Teheran, Iran

              Defendants.

---------------------------------------------------------------------- X

17-cv-_____

## COMPLAINT

Plaintiffs, by their counsel, complain of the Defendants, and hereby allege for their Complaint as follows:

## INTRODUCTION

1.      This is a civil action for wrongful death, personal injury and related torts pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602, *et seq.*, arising from a terror attack carried out by the Hamas terrorist organization, in which suicide bombers blew up a pedestrian mall in downtown Jerusalem ("Terrorist Attack"). As this Court has previously found, "[t]he bombers packed the bombs with nails, screws, pieces of glass, and chemical poisons to cause maximum pain, suffering, and death." *Campuzano v. Islamic Rep. of Iran*, No. 00-cv-2328, DE 51 ¶ 4, 281 F. Supp. 2d 258, 261 (D.D.C. 2003).

2.      The Terrorist Attack was the subject of the *Campuzano* litigation. The plaintiffs herein are relatives of the *Campuzano* plaintiffs.

3.      The bombs "killed five people and wounded nearly two hundred others, including…Diana Campuzano… [and] Gregg Salzman...." *Campuzano*, DE 51 ¶ 5, 281 F. Supp. 2d at 261.

4.      Hamas, which "claimed responsibility for the bombing," *Campuzano*, DE 51 ¶ 7, 281 F. Supp. 2d at 262, carried out the Terrorist Attack by using material support and resources provided by defendants the Islamic Republic of Iran. Indeed, "[t]he bombing...would not have occurred without Iranian sponsorship." *Campuzano*, DE 51 ¶ 13, 281 F. Supp. 2d at 262.

5.      This Court previously found the Defendants liable for the Terrorist Attack and issued a judgment against them, in favor of Diana Campuzano and Gregg Salzman, for

$409,636,607.87 compensatory damages and $112,500,000 punitive damages. *Campuzano v. Islamic Rep. of Iran*, No. 00-cv-2328, DE 52 (D.D.C. 2003) (judgment).

## JURISDICTION AND VENUE

6.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1330-1332, 1367, 1605 note, and 1605A(a). Venue is proper in this Court pursuant to 28 U.S.C. § 1391(f)(4) and the rules of pendent venue.

7.      Personal jurisdiction over the defendants will be established once the defendants are properly served pursuant to 28 U.S.C. 1608(a). 28 U.S.C. 1330(b); *Campuzano*, DE 51, 281 F. Supp. 2d at 271-72.

## THE PARTIES

8.      Gregg Salzman is a U.S. citizen and resident of the State of Florida. He was a plaintiff in the original *Campuzano* action and received a judgment in his favor against the same defendants as are named herein.

9.      Plaintiff Stan Salzman is the father of Gregg Salzman, and is a U.S. citizen and resident of the State of New Jersey.

10.     Plaintiff Roberta Salzman is the mother of Gregg Salzman, and is a U.S. citizen and resident of the State of New Jersey

11.     Plaintiff Lee Salzman is the brother of Gregg Salzman, and is a U.S. citizen and resident of the State of New Jersey.

12.     Diana Campuzano is a U.S. citizen and resident of the State of New York. She was a plaintiff in the original *Campuzano* action and received a judgment in her favor against the same defendants as are named herein.

13.     Plaintiff Ramiro Campuzano is the father of Diana Campuzano, and is a U.S. citizen and resident of the State of New York.

14.     Plaintiff Mabel Campuzano is the mother of Diana Campuzano, and is a U.S. citizen and resident of the State of New York.

15.     Plaintiff Jorge Campuzano is the brother of Diana Campuzano, and is a U.S. citizen and resident of the State of Michigan.

16.     Defendant The Islamic Republic of Iran ("Iran") is, and at all times relevant hereto was, a foreign state within the meaning of 28 U.S.C. § 1603, designated since 1984 as a state sponsor of terrorism pursuant to section 6(j) of the Export Administration Act of 1979 (50 U.S.C. § 2405(j)). Iran, through its political subdivisions, agencies, instrumentalities, officials, employees and agents, including the Iranian Ministry of Information and Security, provided Hamas with material support and resources, for acts of extrajudicial killing within the meaning of 28 U.S.C. §§ 1605(a)(7), 1605A(a)(1), including the Terrorist Attack, and performed other actions that enabled, facilitated and caused the Terrorist Attack and harm to the plaintiffs herein.

17.     Defendant The Iranian Ministry of Information and Security ("MOIS") is the Iranian intelligence service. Within the scope of its agency and office, MOIS provided material support and resources for the commission of acts of extrajudicial killing, including the Terrorist Attack, and performed other actions, that enabled, facilitated and caused the Terrorist Attack and harm to the plaintiffs herein.

18.     Defendant Iranian Islamic Revolutionary Guard Corps a/k/a Pasdaran ("IRG") is an Iranian intelligence agency that exerts considerable influence on the government and policies of Iran. It is also a powerful military instrument for defending Iran's fundamentalist Islamic elements and for exporting principals of Islamic fundamentalism throughout the world via

terrorism. The IRG is the agency through which Iran trained the Hamas militants who executed the Terrorist Attack.

## UNDERLYING FACTS

### Hamas

19.     Hamas is a radical terrorist organization that was established by Islamic militants in 1987.   It is the Palestinian branch of the extremist Muslim Brotherhood organization.

20.     Hamas views Israel and the United States as the greatest enemies of Islam. Hamas opposes a peaceful resolution of the Middle East conflict. The Hamas charter, first published in 1988, states that "There is no solution to the Palestinian problem except by Jihad," or violent struggle against Israel and the West.

21.     Hamas's openly-declared goal is the creation of an Islamic state in the territory of Israel, the West Bank and the Gaza Strip, and the destruction of the State of Israel and the murder or expulsion of its Jewish residents. Hamas seeks to achieve this goal by carrying out terrorist attacks against Jewish civilians in Israel, the West Bank and the Gaza Strip. Hamas proudly and openly acknowledges that it uses terrorism to achieve its political goals. Hamas employs extremist violence against civilian targets in an effort to coerce, intimidate and influence government decision-makers and the public in Israel to accept Hamas's demands.

22.     Between the time of its founding and September 4, 1997 (and until the present day), Hamas has carried out thousands of terrorist attacks in Israel, the West Bank and the Gaza Strip, in which scores of Israeli and U.S. citizens, as well as the nationals of many other countries were murdered and thousands  more wounded.

23.     Between the time of its founding and September 4, 1997, Hamas's policy and practice of carrying out terrorist attacks was and is notorious and well known to the public at large, including the defendants.

24.     Between 1999 and September 4, 1997, the courts of the United States, including this Court, published a number of decisions finding that Hamas was responsible for terrorist attacks in which American and Israeli citizens were killed or injured.

25.     Hamas has been designated by the United States Government as a Specially Designated Terrorist ("SDT") continuously since 1995, as a Foreign Terrorist Organization ("FTO") continuously since 1997, and as a Specially Designated Global Terrorist ("SDGT") continuously since 2001.

**Iran's Provision of Material Support and Resources to the Hamas**

26.     Since 1984 until the present time, defendant Iran has been continuously designated by the United States Department of State as a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. § 2405(j)).

27.     During the period relevant hereto, including the several year period preceding the Terrorist Attack, defendants Iran, MOIS, and IRG provided Hamas with massive financial support with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the Terrorist Attack. Such financial support was provided continuously, routinely and in furtherance and as implementation of a specific policy and practice established and maintained by Iran, in order to assist Hamas achieve goals shared by Iran. These goals included terrorizing the Jewish civilian population in Israel, and weakening Israel's economy, social fabric, and military strength and preparedness.

28.    The Iranian defendants provided this financial support to Hamas pursuant to an agreement reached between Iran and Hamas in the 1980s which remains in force until today. Under that agreement, Hamas undertook to carry out acts of extrajudicial killing and terrorism against Jews in Israel, the West Bank and Gaza, and in return Iran undertook to provide Hamas with financial support to carry out such extrajudicial killings and terrorist attacks. The purpose of this agreement was to achieve the goals detailed in the preceding paragraph.

29.    The Iranian defendants gave substantial aid, assistance and encouragement to one another and to Hamas, and provided massive financial support to Hamas, and thereby aided and abetted Hamas, all with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the Terrorist Attack. The Iranian defendants did so with actual knowledge that Hamas had killed and injured numerous U.S. citizens in terrorist bombings and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their aiding, abetting and provision of material support and resources to Hamas.

30.    The Iranian defendants knowingly and willingly conspired, agreed and acted in concert with one another and with Hamas, in pursuance of the common plan, design, agreement and goals discussed above, to cause and facilitate the commission of acts of extrajudicial killing and international terrorism including the Terrorist Attack. The Iranian defendants did so with actual knowledge that Hamas had killed and injured numerous U.S. citizens in terrorist bombings and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their conspiracy with Hamas.

31.    At all times relevant hereto, defendants MOIS and IRG were agencies, instrumentalities and/or offices of defendant Iran, and performed acts on behalf of defendant Iran,

in furtherance of the interests and policy of defendant Iran and within the scope of its agency and office, within the meaning of 28 U.S.C. §§ 1605(a)(7), 1605 note, 1605A(a)(1), and 28 U.S.C. § 1605A(c), which caused the Terrorist Attack and harm to the plaintiffs herein, in that defendants MOIS and IRG implemented and acted as a conduit and instrumentality for Iran's provision of funds to Hamas for the commission of acts of extrajudicial killing and international terrorism including the Terrorist Attack and actually trained Hamas militants to execute the Terrorist Attack.

32.     As this Court found, "Iran funnels much of its support to Hamas through MOIS," which "spends between $50,000,000 and $100,000,000 a year sponsoring terrorist activities of various organizations such as Hamas." *Campuzano*, DE 51 ¶ 10, 281 F. Supp. 2d at 262.

33.     "IRG is the military wing of MOIS.... Under the direction of MOIS, IRG provides professional military and terrorist training to Hamas operatives responsible for executing terrorist acts throughout the Middle East." *Campuzano*, DE 51 ¶ 11, 281 F. Supp. 2d at 262.

34.     Defendant Iran authorized, ratified and approved the acts of defendants MOIS and IRG.

35.     "Iranian governmental support for terrorism is an official state policy and the approval of high-ranking Iranian officials, including Ayatollah Ali Hoseini Khamenei, Ali Akbar Hashemi–Rafsanjani, and Ali Fallahian–Khuzestani, was necessary for Iran and MOIS to support Hamas with training and economic assistance.... Iran[']s support of Hamas could not have occurred without this senior leadership approval." *Campuzano*, DE 51 ¶ 12, 281 F. Supp. 2d at 262.

36.     Accordingly, defendant Iran is vicariously liable for the acts of defendants MOIS and IRG.

37.     This Court repeatedly has held Iran, MOIS, and IRG liable to victims of state-sponsored terrorism, particularly for terrorist acts carried out by Hamas in Israel. *See*, *e.g.*,

*Campuzano*, *supra*; *Bennett v. Islamic Rep. of Iran,* 507 F. Supp.2d 117 (D.D.C. 2007); *Bodoff v. Islamic Rep. of Iran*, 424 F. Supp.2d 74 (D.D.C. 2006); *Stern v. Islamic Rep. of Iran*, 271 F. Supp.2d 286 (D.D.C. 2003); *Weinstein v. Islamic Rep. of Iran*, 184 F. Supp. 2d 13 (D.D.C. 2002); *Higgins v. Islamic Rep. of Iran*, 2000 WL 33674311 (D.D.C. 2000); *Eisenfeld v. Islamic Rep. of Iran*, 172 F.Supp.2d 1 (D.D.C. 2000); *Elahi v. Islamic Rep. of Iran*, 124 F.Supp.2d 97 (D.D.C. 2000); *Flatow v. Islamic Rep. of Iran*, 999 F. Supp. 1 (D.D.C. 1998); *see also Leibovitch v. Syrian Arab Rep.*, 25 F. Supp. 3d 1071 (N.D. Ill. 2014).

**The Terrorist Attack**

38.     On an unknown date or dates prior to September 4, 1997, Hamas and the Defendants planned, conspired and made preparations to kill and injure innocent Israeli civilians by use of suicide bombs in crowded areas in Israel.

39.     On September 4, 1997, three Hamas militants detonated three separate bombs in the Ben Yehuda pedestrian mall in Jerusalem. Hundreds of civilians were in the mall at the time. Hamas "killed five people and wounded nearly two hundred others, including...Diana Campuzano… [and] Gregg Salzman...." *Campuzano*, DE 51 ¶ 5, 281 F. Supp. 2d at 261.

40.     The Hamas terrorists "[packed the bombs with nails, screws, pieces of glass, and chemical poisons to cause maximum pain, suffering, and death." *Campuzano*, DE 51 ¶ 4, 281 F. Supp. 2d at 261.

41.     Hamas and the Defendants arranged to time the Terrorist Attack to occur at a time when the Ben Yehuda pedestrian mall was known to have high traffic, thus maximizing the devastation caused by the Terrorist Attack.

42.     At all relevant times, the Defendants provided material resources and support, including by providing funding, training, and direction to Hamas to enable Hamas to successfully execute the Terrorist Attack.

43.     The Terrorist Attack "would not have occurred without Iranian sponsorship." *Campuzano*, DE 51 ¶ 13, 281 F. Supp. 2d at 262.

44.     The Defendants conspired and acted in concert with Hamas, in pursuit of their common goals, design and agreements with Hamas, discussed above, to carry out the Terrorist Attack, and other such acts of extrajudicial killing and international terrorism, and the Terrorist Attack was carried out by Hamas further to and as implementation of its aforementioned agreement and conspiracy with the defendants.

45.     Hamas carried out the Terrorist Attack utilizing funds, weapons, terrorist training and other material support, resources, aid and assistance provided by the defendants for the specific purpose of carrying out the Terrorist Attack and other such acts of extrajudicial killing and international terrorism.

**The Plaintiffs' Injuries**

46.     Diana Campuzano's injuries were "life-threatening." *Campuzano*, DE 51 ¶ 18, 281 F. Supp. 2d at 263. Immediately after the Terrorist Attack, "[s]he was completely disoriented, her skin was badly burned, her brain leaked cerebral spinal fluid from a massive skull fracture, and she was blind and hearing impaired." *Campuzano*, DE 51 ¶ 18, 281 F. Supp. 2d at 263.

47.     She required a five-hour craniotomy to repair various injuries to her head and brain and suffered from multiple wounds and burns that "complicated her recovery and caused a life-threatening infection to spread throughout her body." *Campuzano*, DE 51 ¶ 19, 281 F. Supp. 2d at 263. She was given heavy narcotics to reduce her pain. *Id.*

48.     Her permanent injuries include "impaired vision, damage to the retina of her right eye, cataracts in both eyes, destroyed upper sinus cavity, loss of the ability to taste and smell, [and] destroyed left eardrum." *Campuzano*, DE 51 ¶ 20, 281 F. Supp. 2d at 263.

49.     She was subsequently diagnosed with depression and Post-Traumatic Stress Disorder ("PTSD"). *Campuzano*, DE 51 ¶ 21, 281 F. Supp. 2d at 263.

50.     After the Terrorist Attack, she lived with her parents, plaintiffs Ramiro and Mabel Campuzano, for about a year. While at home, she often had crying spells in which she would cry for hours at a time. *Campuzano*, DE 51 ¶ 22, 281 F. Supp. 2d at 263. Her parents both saw marked changes in her personality. *Id.*

51.     She later moved away from her parents but had difficulty adjusting and was unable to resume full time employment. *Campuzano*, DE 51 ¶ 22, 281 F. Supp. 2d at 263-64.

52.     Gregg Salzman spent eight days in the hospital after the Terrorist Attack recovering from "first- and second- degree burns, a perforated eardrum, and wounds from shrapnel that struck him in the midline of his upper lip below his nose." *Campuzano*, DE 51 ¶ 34, 281 F. Supp. 2d at 265.

53.     He has "permanent nerve injury from the shrapnel wound to his upper lip." *Campuzano*, DE 51 ¶ 34, 281 F. Supp. 2d at 265. There is no physiological treatment for his pain, which he will have to suffer through for the rest of his life and with psychological help. *Campuzano*, DE 51 ¶¶ 35-36, 281 F. Supp. 2d at 265.

54.     As a result of his pain, he is unable to work a full work day and has "debilitating headaches." *Campuzano*, DE 51 ¶ 37, 281 F. Supp. 2d at 265.

55.     The plaintiffs are all immediate family members of Diana Campuzano and Gregg Salzman. They have suffered great mental and emotional anguish as a result of the injuries to Diana Campuzano and Gregg Salzman.

56.     The plaintiffs are entitled to soliatium damages for the injuries to their relatives. *Braun v. Islamic Rep. of Iran*, 228 F. Supp. 3d 64, 78, 82-86 (D.D.C. 2017); *Campuzano*, DE 51, 281 F. Supp. 2d at 273-74; *see also id.* at 276-77 (awarding solatium damages to immediate family members of other victims).

57.     The plaintiffs' claims all plainly arise out of the conduct, transaction, or occurrence that formed the basis of the *Campuzano* litigation.

58.     The defendants named herein were all defendants in the *Campuzano* action and were all held liable therein. They all received timely and proper notice of the *Campuzano* litigation and had a full and fair opportunity to contest liability in that action. *Campuzano*, DE 51, 281 F. Supp. 2d at 261, 271-72.

59.     The defendants are all collaterally estopped by *Campuzano* from contesting liability in this action.

60.     The defendants all knew or should have known that the immediate relatives of Diana Campuzano and Gregg Salzman had claims against them for loss of solatium.

61.     The *Campuzano* complaint and the *Campuzano* litigation that followed within the limitations period adequately notified the defendants of the basis for liability that the plaintiffs herein advance in this action.

62.     The defendants were subjected to no prejudice by the *Campuzano* action and are subject to no prejudice by this action.

63.     This action is timely. *See Van Beneden v. Al-Sanusi*, 709 F.3d 1165, 1168-69 (D.C. Cir. 2013).

## FIRST CLAIM FOR RELIEF
## FOR DAMAGES UNDER 28 U.S.C. §1605A(c)

64.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

65.     Iran is a foreign state that since 1984 has continuously been designated as a state sponsor of terrorism within the meaning of 28 U.S.C. § 1605A.

66.     The defendants provided material support and resources to Hamas, within the meaning of 28 U.S.C. § 1605A, which caused and facilitated the Terrorist Attack. *Campuzano*, DE 51, 281 F. Supp. 2d at 270.

67.     The Terrorist Attack was an act of extrajudicial killing within the meaning of 28 USC § 1605A. *See Campuzano*, DE 51, 281 F. Supp. 2d at 269-70.

68.     The Terrorist Attack did not occur within Iranian territory. *Campuzano*, DE 51, 281 F. Supp. 2d at 270.

69.     Diana Campuzano and Gregg Salzman were severely injured by the Terrorist Attack and continue to suffer as a result of those injuries.

70.     The maiming and injury of Diana Campuzano and Gregg Salzman caused the plaintiffs severe injury, including: pecuniary loss and loss of income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

71.     The plaintiffs are all U.S. citizens or U.S. nationals.

72.     As a direct and proximate result of the conduct of the defendants, plaintiffs suffered the injuries and harm described herein.

73.     The defendants are therefore jointly and severally liable under 28 USC 1605A(c) for the full amount of plaintiffs' damages.

74.     The conduct of the defendants was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages under 28 U.S.C. § 1605A(c).

## SECIND CLAIM FOR RELIEF
## FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

75.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

76.     The defendants subjected Diana Campuzano and Gregg Salzman to severe physical injury and risk of death.

77.     Defendants' conduct was willful, outrageous and dangerous to human life, and violates applicable criminal law, all international standards of civilized human conduct and common decency.

78.     Upon learning of the Terrorist Attack, the plaintiffs suffered severe emotional distress in worrying about their family member—Diana Campuzano and Gregg Salzman—and/or not knowing the condition or whereabouts of that family member.

79.     Defendants intended to, and did in fact, terrorize the plaintiffs, and cause them egregious emotional distress. As a result and by reason of the Terrorist Attack, which was caused by the actions of defendants described herein, plaintiffs have suffered and will continue to suffer terror, severe mental anguish, bereavement and grief, and injury to their feelings.

80.     Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages. *See Campuzano*, DE 51, 281 F. Supp. 2d at 271, 276-77 (holding the

defendants liable under intentional infliction of emotional distress to relatives of other victims who, like the plaintiffs here, were not present at the Terrorist Attack).

81.     The conduct of the defendants was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages.

## JURY DEMAND

Plaintiffs demand trial by jury of all issues legally triable to a jury.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs demand judgment as follows:

(a)     Judgment against all defendants, jointly and severally, for compensatory damages in an amount to be determined at trial;

(b)     Judgment against all defendants, jointly and severally, for punitive damages in an amount to be determined at trial;

(c)     Plaintiffs' costs and expenses;

(d)     Plaintiffs' attorneys fees; and

(e)     Such other and further relief as the Court finds just and equitable.

Dated: November 16, 2017
       Brooklyn, New York

Respectfully submitted,

THE BERKMAN LAW OFFICE, LLC
*Counsel for Plaintiffs*

By:_____
       Robert J. Tolchin
       (D.C. Bar #NY0088)

111 Livingston Street, Suite 1928
Brooklyn, New York 11201
(718) 855-3627